MAIN, Justice.
We granted certiorari review to determine whether there was a fatal variance between the indictment, which charged James R. Hall with theft of “currency,” and the evidence produced at trial, which established theft of the funds by means of depositing a check. We conclude that there was no material variance in the indictment and the evidence, and we affirm the judgment of the Court of Criminal Appeals.
I. Facts and Procedural History
Hall was the “commander” of the Houston County chapter, Chapter 87, of the Disabled American Veterans (“the DAV”). In 2013, Hall had issued to himself a check from the DAV’s bank account in the amount of $1,500, purportedly to reimburse Hall for expenses incurred in the performance of his duties as commander. He deposited the check into his personal bank account. The expenditure, however, had not been approved by the DAV chapter and, therefore, violated the provisions of the DAV’s constitution and bylaws. *1285 The DAV requested that Hall reimburse the funds to the DAV and provide the DAV with documentation supporting the alleged expenses. Hall failed to do so.
On February 20, 2014, a Houston County grand jury issued an indictment charging Hall with second-degree theft of property, a violation of § 13A-8-4, Ala.Code 1975. The indictment charged that Hall “did knowingly obtain ... control over United States Currency, the property of Disabled American Veterans Chapter 87, of the value which exceeds $500.00 but does not exceed $2500.00.” The case proceeded to trial. At the close of the State’s case, Hall moved for a judgment of acquittal on the ground that there was a fatal variance between the indictment, which alleged a theft of currency, and the evidence, which established that a check had been improperly taken. Hall’s motion was based on a line of decisions from this Court and the Court of Criminal Appeals that hold that “‘[a] fatal variance exists between an indictment alleging the theft of “lawful currency” and evidence showing the theft of [a check].’ ” Delevie v. State, 686 So.2d 1288, 1284 (Ala.Crim.App.1996) (quoting Shubert v. State, 488 So.2d 44, 46 (Ala.Crim.App.1986)). The trial court denied Hall’s motion. Hall was convicted of second-degree theft of property and was sentenced to two years’ imprisonment. The sentence was suspended, and Hall was placed on two years’ supervised probation. He appealed.
The Court of Criminal Appeals affirmed Hall’s conviction, concluding that this Court’s decision in Ex parte Roffler, 69 So.3d 225 (Ala.2010), effectively overruled those prior cases holding that a fatal variance existed between an indictment stating theft of currency and evidence establishing theft of a check. Hall v. State, 203 So.3d 1277 (Ala.Crim.App.2015). We granted certiorari review to determine whether the Court of Criminal Appeals correctly applied Roffler to this case.
II. Standard of Review
This case involves the application of law to undisputed facts, and this Court reviews pure questions of law in criminal cases de novo. Ex parte Walker, 928 So.2d 259, 262 (Ala.2005).
III. Analysis
This case concerns the fatal-variance rule. The Court of Criminal Appeals summarized that rule as follows:
“‘A fatal variance between allegations in an indictment and proof of those allegations presented at trial exists when the State fails to adduce any proof of a material allegation of the indictment or where the only proof adduced is contrary to a material allegation in the indictment. Johnson v. State, 584 So.2d 881, 884 (Ala.Crim.App.1991). “Alabama law requires a material variance between the indictment and the proof adduced at trial before a conviction will be overturned. Ex parte Collins, 385 So.2d 1005 (Ala.1980).” Brown v. State, 588 So.2d 551, 558 (Ala.Crim.App.1991).’
“Bigham v. State, 23 So.3d 1174, 1177 (Ala.Crim.App.2009).
“ ‘ “The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled.” House [v. State], 380 So.2d [940] at 942 [ (Ala.Crim.App.1989) ]. “Not every variance is fatal. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Reviewing a claim of variance requires use of a two step *1286 analysis: (1) was there in fact a variance between the indictment and proof, and (2) was the variance prejudicial.” United States v. McCrary, 699 F.2d 1308, 1310 (11th Cir.1983). “The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to ‘affect the substantial rights’ of the accused.” Berger, 295 U.S. at 82, 55 S.Ct. at 630. “Variance from the indictment is not always prejudicial nor is prejudice assumed.” United States v. Womack, 654 F.2d 1034, 1041 (5th Cir.1981), cert. denied, 454 U.S. 1156, 102 S.Ct. 1029, 71 L.Ed.2d 314 (1982). The determination of whether a variance affects the defense will have to be made based upon the facts of each case. United States v. Pearson, 667 F.2d 12, 15 (5th Cir.1982).’
“Smith v. State, 551 So.2d 1161, 1168-69 (Ala.Crim.App.1989),”
Hall, 203 So.3d at 1281.
In Ex parte Airhart, 477 So.2d 979, 980-81 (Ala.1985), this Court held that a fatal variance existed when the charge pertained to “currency,” but the proof established unauthorized control over “checks.” This principle has been restated repeatedly by the Court of Criminal Appeals. See, e.g., Harrison v. State, 13 So.3d 45, 48 (Ala.Crim.App.2009)(“[T]he indictment charged theft of currency, but the evidence at trial established unauthorized control over a check. Thus, there was a fatal variance between the indictment and the evidence presented at trial.”); Delevie v. State, 686 So.2d at 1285 (“Here, there was a fatal variance between the indictment alleging that the appellant stole $2,550 currency and the proof of a theft of a check for that amount.”); and Henderson v. State, 520 So.2d 169, 170 (Ala.Crim.App.1987)(“[T]here is a fatal variance when the charge involves ‘currency’ and the evidence establishes -‘checks’.... ”). Hall contends that the Court of Criminal Appeals’ decision in his case is in conflict with those prior decisions. The State, on the other hand, urges us to' hold, as did the Court of Criminal Appeals, that those pri- or decisions were overruled by this Court’s decision in Ex parte Roffler.
In Roffler we considered the issue whether in the 21st century an indictment charging theft of a certain dollar amount of funds was legally sufficient if it identified the dollar amount of the funds taken, but not the medium of exchange of those funds. Prior caselaw had held that indictments were defective and insufficient when they did not specify the medium of exchange. See Shubert v. State, 488 So.2d 44 (Ala.Crim.App.1986). We noted in Rof-fler that this rule was a relic from the time when determining the value of funds depended on the medium[1] of exchange[1] and concluded:
“In the 21st century, however, the various mediums of exchange represent the same standard of value for the dollar. The medium of exchange involved — whether cash, check, debit-card transaction, credit-card transaction, electronic funds, etc. — does not determine the value of the amount of funds. Whether the dollar amount is in the form of cash, check, multiple-party check, credit-card transaction, debit-card transaction, or electronic funds, businesses, banks, and financial institutions recognize that the dollar has a standard value; consequently, the medium of exchange does not determine the *1287 value of a monetary amount. This acceptance of the various mediums- of exchange as interchangeable and representing equivalent values for the dollar makes describing the medium of exchange immaterial when describing the funds over which a defendant allegedly has exercised unauthorized control. The material concern is the • monetary amount. Therefore, we conclude that an indictment charging the offense of theft of a certain monetary amount, in violation of one of the provisions of § 13A-8-1 et seq,, Ala.Code 1975, but that does not identify the medium of exchange is legally sufficient. Section 15-8-25, Ala. Code 1975, provides:
“ ‘An indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the judgment.’
“See also Rule 13.2, Ala. R.Crim. P. (providing that an indictment ‘shall be a plain concise statement of the charge in ordinary language sufficiently definite to inform a defendant of common understanding of the offense charged and with a degree of certainty which will enable the court, upon conviction, to pronounce the proper judgment’). It is unreasonable to conclude that in the 21st century a defendant charged in an indictment with exercising unauthorized control over a certain monetary amount would not know what is intended or that a court could not pronounce judgment on conviction for theft of said amount, if the medium of exchange is not designated. Therefore, we hold that the requirements of § 15-8-25, Ala.Code 1975, are satisfied even if the indictment stating the monetary amount over which the defendant is allegedly exerting unauthorized control does not identify the medium of exchange. Identification of the monetary amount alone provides the defendant adequate notice of the theft to prepare his or her defense and to avoid double jeopardy.
“Moreover, we cannot conclude that a defendant'is substantially prejudiced if an indictment charging theft of a certain monetary amount in violation of § 13A-8-1 et seq., Ala.Code 1975, does not include the medium of exchange of those funds. Section 15-8-4, Ala.Code 1975, provides:
“‘An indictment must not be held insufficient, nor can the trial, judgment or other proceedings thereon be affected by reason of any defect or imperfection in any matter of form which does not prejudice the substantial rights of the defendant ■ on the trial.’
“See also Rule 13.5(c)(2), Ala. R.Crim. P. (stating that ‘[n]o charge shall be deemed invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, arrested, or in any manner affected, for any defect or imperfection in the charge which does not tend to prejudice the substantial rights of the defendant upon the merits’). Again, the general acceptance of the various mediums of exchange as having the same monetary value negates any finding of prejudice to the substantial rights of a defendant in this regard; However, to safeguard a defendant, the Alabama Rules of Criminal Procedure provide a means for the defendant to request that the State provide a more definite statement of the offense. See Rule 13.2(3), Ala. R.Crim. P. (providing that a defendant may move for a more definite *1288 statement of the offense charged before the entry of a plea).”
69 So.3d at 230-31.
We recognize that Roffler, a case concerning the sufficiency of an indictment where no medium of exchange' was identified, is not “on all fours” with this case, where the issue is whether there is a fatal variance when the medium of exchange is specified in the indictment and the proof at trial establishes a different medium of exchange. Nevertheless, we agree with the judgment of the Court of Criminal Appeals. In order for a variance to be fatal it must be material. See Ex parte Collins, 385 So.2d 1005, 1009 (Ala.1980); House v. State, 380 So.2d 940, 942-43 (Ala.1979). In light of our rationale in Roffler, we are unable to conclude that there is a “material” — and thus fatal — variance in this case. The crux of the offense in this case is that Hall stole the DAV’s property in violation of § 13A-8-4. Whether he did so by depositing a check on the DAV’s account into his personal account or accessing the cash box and taking the amount in cash is immaterial. See Simmons v. State, 242 Ala. 105, 106, 4 So.2d 905, 906 (1941) (“[A deposit slip] was ... merely the instrumentality through which the defendant received his money, and to hold a fatal variance in such a case would run counter to common sense and tend to frustrate the practical end, for the accomplishment of which courts were established.”). The indictment placed Hall on notice of the crime of which he was charged and did not otherwise prejudice his defense. Accordingly, we agree with the Court of Criminal Appeals that “although there was a variance between the facts alleged in Hall’s indictment and the proof produced at trial, under Roffler, the variance was not a material variance that affected [Hall’s] substantial rights or prejudiced his ability to prepare his defense.” Hall, 203 So.3d at 1283. To the extent our holding conflicts with Ex parte Air-hart,- supra, and its progeny, those cases are overruled.[2]
IV. Conclusion
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
STUART, BOLIN, PARKER, MURDOCK, WISE, and BRYAN, JJ., concur.
SHAW, J., concurs specially.
MOORE, C.J., dissents.

. "For example, in 1844, the value of five gold coins did not equal the value of five silver coins; therefore, in 1844, to adequately describe the property in an indictment charging common-law theft of an amount of funds the medium of exchange had to be described to determine the value of the funds taken.” 69 So.3d at 230.

. We note that Ex parte Airhart does not appear to have been in accord with the general " rule. Our research indicates that most jurisdictions that have addressed the question have found no fatal variance under similar circumstances. See, e.g., 52B C.J.S. Larceny § 126 (2012) ("[I]n general, proof of the larceny of a check will support an indictment charging the larceny of money; in such case, no fatal variance occurs.”); State v. March, 293 S.W.3d 576, 590-91 (Tenn.Crim.App.2008); State v. Walston, 140 N.C.App. 327, 536 S.E.2d 630 (2000) (finding no fatal variance where the indictment stated currency, but the evidence showed defendant deposited check); Bartel v. State, 202 Ga.App. 458, 414 S.E.2d 689 (1992) (same); Stuckey v. State, 560 N.E.2d 88, 93 (Ind.Ct.App.1990) (holding that any variance between indictment charging currency and proof establishing negotiated check was immaterial); State v. Cottrill, 29 Or.App. 425, 563 P.2d 1236 (1977) (finding no fatal variance between indictment alleging currency and proof establishing travelers checks); People v. Palen, 7 A.D.2d 791, 792, 181 N.Y.S.2d 9, 13 (1958), aff'd, 7 N.Y.2d 107, 164 N.E.2d 98, 195 N.Y.S.2d 829 (1959) ("[W]here the indictment charges theft of money, and theft of a check is shown, or the opposite, no fatal variance occurs.”); State v. Candy, 113 Ohio App. 334, 338, 175 N.E.2d 191, 194 (1959) ("[M]oney received by defendant through the medium of a check, although indicted for receiving cash, is not a variance.”); and Rick v. State, 151 Tex.Crim. 426, 207 S.W.2d 629, 630 (1947).